**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | |
| | : | **No. 11-13** |
| **ANTHONY DOUGLAS ELONIS** | : | |
| | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                    **October 20, 2011**

      The defendant is charged with making threatening communications for comments posted to the social networking website, Facebook. It is a federal crime to transmit in interstate commerce a communication containing a threat to injure another person. Mr. Elonis' motion to dismiss the indictment raises constitutional challenges to the criminal charges and to the statute. For the reasons set forth below, I will deny the defendant's motion to dismiss.

**I.     Background**

      Mr. Elonis was employed as a supervisor in the operations department at Dorney Park and Wildwater Kingdom, an amusement park in Allentown, Pennsylvania. He was fired on October 17, 2010. After his termination, Mr. Elonis began posting statements on his Facebook page suggesting he would do damage to Dorney Park, that he had enough explosives to harm the Pennsylvania State Police and the Berks County Sheriff's Department, and do violence to a kindergarten class. Additionally, Mr. Elonis posted

threatening comments concerning his wife.[1]  Mr. Elonis was arrested on December 8,

2010, and charged in a criminal complaint with transmitting in interstate commerce a

communication containing a threat to injure the person of another in violation of 18

U.S.C. § 875(c).[2]

      On January 7, 2011, the grand jury returned a five-count indictment charging Mr.

Elonis with making threatening communications (1) to patrons and employees of Dorney

Park and Wildwater Kingdom, (2) to his wife, (3) to employees of the Pennsylvania State

Police and Berks County Sheriff's Department, (4) to a kindergarten class, and (5) to an

FBI agent.

## II.    Discussion

      An indictment must allege sufficient facts to establish the legal requirements of the

crimes charged.  See United States v. Cefaratti, 221 F.3d 502, 507 (3d Cir. 2000).  "In

order to be valid, an indictment must allege that the defendant performed acts which, if

proven, constituted a violation of the law that he or she is charged with violating."

United States v. Hedaithy, 392 F.3d 580, 589 (3d Cir. 2004) (citing United States v.

Zauber, 857 F.2d 137, 144 (3d Cir. 1988)).  Dismissal of an indictment is an "extreme

remedy," reserved only for the most egregious abuses of the criminal process.  United

States v. Fisher, 692 F. Supp. 495, 501 (E.D. Pa. 1988) (quoting United States v.

Birdman, 602 F.2d 547, 559 (3d Cir. 1979)).

---

[1]Mr. Elonis' wife subsequently obtained a Protection from Abuse Order (PFA) for herself and the couple's two children based in part on the threats in these comments.

[2] The statute under which the defendant is charged, 18 U.S.C. § 875(c), provides: "Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both."

Mr. Elonis contends that his Facebook postings are protected speech under the First Amendment and, therefore, cannot be criminal.  I recognize that "the bedrock principle underlying the First Amendment . . . is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."  <u>Texas v. Johnson</u>, 491 U.S. 397, 414 (1989).  It is also well-established that there are certain categories of speech that are not protected under the First Amendment.  <u>See Chaplinsky v. New Hampshire</u>, 315 U.S. 568, 571-72 (1942).  One of these categories is speech which is a "true threat."  <u>See Watts v. United States</u>, 394 U.S. 705, 708 (1969).

A. <u>Whether Mr. Elonis' Facebook Postings Communicate True Threats is a Question of Fact</u>

In <u>United States v. Kosma</u>, 951 F.2d 549, 558 (3d Cir. 1991) the Third Circuit interpreted 18 U.S.C. § 871, a statute regarding threats on the President and containing very similar language to 18 U.S.C. § 875(c).  The Third Circuit held that the "intent" required with respect to threatening speech means the government must prove the defendant intentionally made the communication, not that he intended to make a threat. This intent requirement is limited to the defendant's state of mind when he made the statement or the communications.  In this case, the "intent" element is satisfied if the government proves the defendant intended to make the posts on Facebook.

If the government proves the defendant intended to make the statement, i.e., the Facebook posting in question, the inquiry then becomes whether the statement is a true threat.  If it is not a true threat, the statement is protected by the First Amendment and

3

there can be no criminal liability.  If the statement contains a true threat, it is not protected by the First Amendment and the defendant could be found guilty of communicating a threat under § 875.

Whether the Facebook postings contain true threats is a question of fact for the jury and cannot be decided by the court on a motion to dismiss.[3]  What standard the jury should apply to decide if the postings contain a true threat is an interesting question.[4] There seems to be general agreement that the court should instruct the jury on an objective test.  Some courts apply an objective test that focuses on the reaction of the "reasonable recipient" to the statements.  Others focus on the "reasonable speaker" and

---

[3] See United States v. Voneida, 337 Fed. Appx. 246, 249 (3d Cir. 2009) (citing United States v. Malik, 16 F.3d 45 (2d Cir. 1994)) (stating whether a statement is a "true threat" under 18 U.S.C.S. § 875(c) is a question best left to a jury).  Courts in other jurisdictions have concluded that "whether words used are a 'true threat' is generally best left to the triers of fact."  See United States v. Carrier, 672 F.2d 300 (2d Cir. 1982).

[4] In Virginia v. Black, the United States Supreme Court commented on whether courts can still use an objective test to determine whether speech constitutes a "true threat."  The Court described "true threats" as

> those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. . . . The speaker need not actually intend to carry out the threat.  Rather, a prohibition on true threats "protect[s] individuals from the fear of violence" and "from the disruption that fear engenders," in addition to protecting people "from the possibility that the threatened violence will occur. Intimidation in the constitutionally prescribed sense of the word is a type of true threat, where a speaker directs a threat to a person or group of person with the intent of placing the victim in fear of bodily harm or death.

538 U.S. 343, 359-60 (2003).  A plurality of the Court, however, held that a jury instruction stating that the act of burning a cross was prima facie evidence of an intent to intimidate was unconstitutional, because it did not differentiate between constitutionally protected speech and unprotected speech.  Id. at 3.

Courts after Virginia v. Black are divided as to whether Black replaces the objective test with a subjective test.  For example, the Ninth Circuit has adopted a subjective test.  United States v. Cassel, 408 F.3d 622, 633 (9th Cir. 2005).  The Cassel court stated that "speech may be deemed unprotected by the First Amendment as a 'true threat' only upon proof that the speaker subjectively intended the speech as a threat." Id.  Other courts have read Black as consistent with an objective test and continued to use their previous standard.

what he or she might anticipate would be the reaction to the communications.[5]   The Third

Circuit in Kosma clearly adopted the "reasonable speaker" test:

> The objective, reasonable person test requires that the defendant intentionally make a statement, written or oral, in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm.

Id. at 559.  In considering whether a communication is a true threat all circuits

seem to agree the jury should "consider context, including the effect of an

allegedly threatening statement on the listener."  See Planned Parenthood v. Am.

Coalition of Life Activists, 290 F.3d 1058, 1074-75 n.7 (9th Cir. 2002);   see also

United States v. Kosma, 951 F.2d at 553-54 (alleged threats must be analyzed in

context).

   The defendant argues the communications alleged to be threats in the indictment

do not constitute "true threats," and are, in fact, protected speech under the First

Amendment.  Mr. Elonis contends that the Government did not show he had any

---

[5]All Circuits, other than the Ninth Circuit, apply an objective test. However, these courts are split as to whether the focus of the reasonable person should be on the speaker or the recipient.  While each of these "tests" focuses differently, they can both be viewed as "objective" tests.  For instance, the Eighth Circuit, among others, adopted a "reasonable listener" test, holding that a "court must analyze an alleged threat in the light of its entire factual context, and decide whether the recipient of the alleged threat could reasonably conclude that it expresses a determination or intent to injure presently or in the future."  See United States v. Dinwiddie, 76 F.3d 913, 925 (8th Cir. 1996).

 The Third Circuit, among others, adopted a "reasonable speaker" test, holding that a true threat exists when the "defendant intentionally make[s] a statement . . . in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm upon or to take the life of the [target]."  United States v. Kosma, 951 F.2d 546, 553-54 (3d Cir. 1991).  Even among Third Circuit decisions, there are some apparent inconsistencies regarding the "reasonable speaker" standard.  See United States v. D'Amario, 330 Fed. Appx. 409, 414 (3d Cir. 2009) (nonprecedential) (quoting Kosma's "reasonable speaker" language and mischaracterizing it as a "reasonable recipient" standard); United States v. Zavrel, 384 F.3d 130, 136 (3d Cir. 2004) (stating, in dicta, that the "reasonable recipient" test should be used in interpreting "true threat" under 18 U.S.C. § 876).  However, Kosma's "reasonable speaker" test remains the binding precedent.

subjective intent that the posts be understood as threats, that any third parties felt

threatened by the posts, or that the posts provoked any third party listeners/readers.  (Doc.

#24 at 12.)  Mr. Elonis states these posts are simply crude, spontaneous and emotional

language expressing frustration, and that they were not sufficiently definite to constitute a

true threat.  Id. at 7.  The Government contends Elonis' group of Facebook "friends"

included those persons whom he unambiguously threatened, including his wife and

former co-workers at Dorney Park.  Further, the Government argues that a reasonable

person could see Mr. Elonis' posts as threats and, in fact, did.[6]

A reasonable jury could find Mr. Elonis' posts constituted true threats by applying

the objective speaker test.  For example, on November 15, 2010 Mr. Elonis posted:

> And if worse comes to worse
> I've got enough explosives
> to take care of the State Police and the Sheriff's Department.

The next day, on November 16, 2010 Mr. Elonis posted:

> That's it, I've had about enough
> I'm checking out and making a name for myself
> Enough elementary schools in a ten mile radius
> to initiate the most heinous school shooting ever imagined
> And hell hath no fury like a crazy man in a Kindergarten class
> The only question is . . . which one?

Additionally, Mr. Elonis' wife was granted a PFA Order due to the threatening posts

targeting her, which, even after the PFA was granted, Mr. Elonis continued to make.[7]

---

[6] At least three people, co-workers and friends of Mr. Elonis, will testify regarding their troubled reactions to Mr. Elonis' Facebook posts.  (Doc. #33 at 10-11.)

[7] See Mr. Elonis' post regarding his wife on or about November 15, 2010, which states "Fold up your PFA and put it in your pocket[.]  Is it thick enough to stop a bullet?"  (Doc. #1 at 5.)

Therefore, whether the posts by defendant constitute threats within the proscription of 18 U.S.C. § 875(c) may not be decided as a matter of law at this stage of this case.[8] The defendant's intentions when posting the content, the reasonable expectation as to the effect of the posts on a recipient, and the circumstances surrounding the posts present issues of fact.

   B.   18 U.S.C. § 875(c) is Constitutional

   Mr. Elonis argues that 18 U.S.C. § 875(c) is overly broad and unconstitutionally vague.  Specifically he contends: (1) § 875(c) covers a substantial amount of protected speech and (2) the statute fails to provide a person with a reasonable opportunity to know what speech is disallowed and what is not.[9]  Courts review these contentions applying a presumption of constitutionality to the challenged statute.  Marshall v. Lauriault, 372 F.3d 175, 185 (3d Cir. 2004) (citing I.N.S. v. Chadha, 462 U.S. 919, 944 (1983)).

   i.   *The Statute is Not Overly Broad*

   The defendant asserts that § 875(c) is overly broad since, absent a requirement of subjective intent, it permits conviction for a substantial amount of protected speech.  To support his claim, the defendant points to a variety of communications that he contends

---

[8] See United States v. Fulmer, 108 F.3d 1486, 1490, 1492 (1st Cir. 1997) (voicemail message to Federal agent that "the silver bullets are coming. . . . Enjoy the intriguing unraveling of what I said to you" was, given defendant's history of threats against the agent, reasonably understood as a "true threat" under 18 U.S.C. § 875[c]) and United States v. Voneida, 337 Fed. Appx. 246, 247 (3d Cir. Pa. 2009) (holding that statements, including one that defendant posted he would make the Virginia Tech shooting incident look like "a trip to an amusement park," demonstrated a serious intention to inflict bodily harm and could be viewed as a threat).

[9] The elements of § 875(c), as construed by the Third Circuit, are that the defendant said or transmitted a communication in interstate commerce; that the communication contained a threat to injure another person.  To prove a violation under this statute, the Government must prove that the defendant "acted knowingly and willfully" in making the threatening communication.  See United States v. Himelwright, 42 F.3d 777, 782 (3d Cir. 1994).

are protected under the First Amendment, but would subject the speaker to criminal

prosecution under the statute, including the following:

> - President Bush's comments in a national address in March 2003 that the United States would commence bombing Iraq within 48 hours if Saddam Hussein did not surrender and leave the country.

> - President Obama's comments to the members of a musical group that his daughters were huge fans, "but, boys, don't be getting any ideas.  I have two words for you: predator drones."

> - Samuel L. Jackson's role in the 1994 film Pulp Fiction where he plays a hitman who recites a passage from the Book of Ezekiel 25:17 prior to murdering each of his victims.

The defendant contends that by defining "true threats" as "where the speaker

means to communicate a serious expression of intent to commit an unlawful act of

violence," the Supreme Court held that a requirement of subjective intent to threaten is a

precondition to a finding of constitutionality.  However, many courts have held that this

language of the Supreme Court is more appropriately interpreted as stating that there

must be an intentional, i.e., knowing, communication of what is an objectively serious

threat.  Therefore, proof of subjective intent to actually do harm is not required.  So long

as the defendant knowingly made the statement, whether it was a threat is determined by

an objective reasonable speaker standard.  See United States v. Kosma, 951 F.2d at 553-

54 (3d Cir. 1991).  Moreover, an objective interpretation does not sweep too broadly, and

would not incorporate the "protected speech" envisioned in the defendant's motion

because the statute criminalizes only "true threats."  See United States v. Francis, 164

F.3d 120, 122-23 (2d Cir. 1999) (finding the statute constitutional, as it criminalizes only

true threats even though there is no requirement that the Government prove that the defendant intended to carry out his threats).

### ii.    *The Statute is Not Impermissibly Vague*

The defendant also contends that the statute is impermissibly vague.  The essence of this challenge is that § 875(c) does not define what is meant by a "threat;" and, that it therefore "fails to provide a person with a reasonable opportunity to know what speech is disallowed and what is not."[10]  (Doc. #24 at 28).

To survive vagueness review, a statute must (1) define the offense with sufficient definiteness that a person of ordinary intelligence can understand what conduct is prohibited; and (2) establish standards to permit police to enforce the law in a non-arbitrary, nondiscriminatory manner.  United States v. Mariano, 2006 U.S. Dist. LEXIS 7497 at *9 (E.D. Pa. Feb. 27, 2006) (citing City of Chicago v. Morales, 527 U.S. 41, 56 (1999)).

The defendant's argument is without merit.  The examples of "convictions upheld under 18 U.S.C. § 875(c) are innumerable."  See United States v. Vaksman, 2009 U.S. Dist. LEXIS 119287 at *11 (E.D. Wash. Dec. 4, 2009).  Defendant's claim that the statute does not define "threat" and the case law provides the only interpretations of "threat" is misleading.  Courts may legitimately look to interpretations in case law when

---

[10] Even considering the general intent requirement ("knowingly"), as compared to a specific intent requirement ("willfully"), an ordinary citizen can understand what is meant by the terms "transmit," "threat to kidnap," and "threat to injure the person of another" and the statute easily provides sufficient standards to allow enforcement in a non-arbitrary manner.  United States v. Tiller, 2008 U.S. Dist. LEXIS 85243 at *3 (W.D. La. Oct. 21, 2008).

determining whether a statute is unconstitutionally vague.  See Grayned v. City of Rockford, 408 U.S. 104, 109-10 (1972).

I find that § 875(c) is not unconstitutional either due to overbreadth or vagueness. The term, "threat to injure the person of another" is commonly understood.  Every court to consider the issue has so held.[11]  By construing the statute to apply only to "true threats," the Courts have limited its application so that it captures only speech that is unprotected under the First Amendment.

**IV. Conclusion**

For the reasons set forth in this memorandum defendant's Motion to Dismiss the Indictment (Doc. #24) is denied.

---

[11] See, e.g., United States v. Sutcliffe, 505 F.3d 944, 953-54 (9th Cir. 2007) ("[W]e are convinced that the statute is not impermissibly vague.  An ordinary citizen can understand what is meant by the terms 'threat to kidnap' and 'threat to injure,' and we are persuaded that the statute provides sufficient standards to allow enforcement in a non-arbitrary manner."); United States v. Tiller, No. 07-50067, 2008 U.S. Dist. LEXIS 85243, 2010 WL 4690511 at *1 (W.D. La. Oct. 21, 2008) ("Even considering the general intent requirement . . . an ordinary citizen can understand what is meant by the terms 'transmit,' 'threat to kidnap,' and 'threat to injure the person of another,' and the statute easily provides sufficient standards to allow enforcement in a non-arbitrary manner.").