IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 11 - 013 |
| | : | |
| ANTHONY DOUGLAS ELONIS | : | |

GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT'S POST-TRIAL MOTIONS

I.    Introduction

Over eight months after he was convicted, the defendant filed post-trial motions alleging

insufficiency of the indictment, improper and insufficient jury instructions, and insufficient

evidence to support Counts Three and Five.  All of the defendant's claims lack merit and should

be denied.

II.    Background

On January 6, 2011, the defendant was indicted and charged with five counts involving

violations of Title 18, United States Code, Section 875(c).   On October 21, 2011, the defendant

was convicted of Counts Two, Three, Four, and Five.  The jury acquitted on Count One.  On

June 18, 2012, the defendant filed post-convictions motions.[1]

---

[1]  The government preserves its objection to this Court's review of the post-trial motions.
The jury returned its verdict on October 20, 2011.  On May 8, 2012, defense counsel (who had
been appointed on February 10, 2012), filed a motion for an extension of time to file post-trial
motions, claiming excusable neglect as set forth in Federal Rule of Criminal Procedure 45.  The
Court granted this motion, over the government's objection.  However, the 14-day time limits in
Rule 29 (motion for judgment of acquittal) and Rule 33 (motion for new trial) are "claim-
processing rules," which must be enforced if invoked by the government.  Eberhart v. United
States, 546 U.S. 12 (2005) (per curiam).  Further, defense counsel did not set forth any excusable
neglect, merely a desire to review transcripts and discuss the case with the defendant before
determining whether to file a motion.  Those actions are required in every case; if they
constituted "neglect," they would render the time limits in Rules 29 and 33 as nullities.

III.   Argument

    A.    The indictment was sufficient.

Elonis asserts that the indictment, charging violations of Section 875(c), was insufficient to state an offense.  He is wrong.

The statute provides:

> Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

The indictment tracked the language of the statute, adding the date and location of each violation, and the general content and identity of the target of the threat.  Count Two asserted:

> On or about November 6, 2010, through on or about November 15, 2010, in Bethlehem, in the Eastern District of Pennsylvania, and elsewhere, defendant ANTHONY DOUGLAS ELONIS knowingly and willfully transmitted in interstate and foreign commerce, via a computer and the Internet, a communication to others, that is, a communication containing a threat to injure the person of another, specifically, a threat to injure and kill T.E., a person known to the grand jury.  In violation of Title 18, United States Code, Section 875(c).

The other counts were identically phrased.  Count Three specifically alleged "a threat to injure employees of the Pennsylvania State Police and the Berks County Sheriffs Department" made on November 15, 2010; Count Four alleged "a threat to injure a kindergarten class of elementary school children" made on November 16, 2010; and Count Five alleged "a threat to injure an agent of the Federal Bureau of Investigation" made on November 30, 2010.

An indictment is sufficient if it alleges the elements of the offense, and provides the defendant with sufficient notice of the charge to permit him to enter a plea and to object to a successive prosecution for the same offense.  United States v. Olatunji, 872 F.2d 1161, 1168 (3d

Cir. 1989).  Thus, as the Court explained at length in <u>Olatunji</u>, an indictment which tracks the language of the statute at issue is ordinarily sufficient, and there is no special rule requiring additional allegations for particular types of offenses.

Consistently, Rule 7(c)(1) of the Federal Rules of Criminal Procedure states that the indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  It is a long-established matter of law that:

> the true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for similar offenses, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

<u>Hagner v. United States</u>, 285 U.S. 427, 431 (1932).  The indictment need not include greater specificity than the statutory language "so long as there is factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution."  <u>United States v. Kemp</u>, 500 F.3d 257, 280 (3d Cir. 2007) (quoting <u>United States v. Rankin</u>, 870 F.2d 109, 112 (3d Cir. 1989)).

Elonis now argues, however, that the indictment here did not charge an offense at all.  He relies on the Court's decision in <u>United States v. Panarella</u>, 277 F.3d 678 (3d Cir. 2002), which held that a motion to dismiss an indictment as failing to state an offense may be considered at any time, even on appeal.[2]  Plainly, this rule is grossly unfair to the government, as it allows a

---

[2]  <u>Panarella</u> relied on Fed. R. Crim. P. 12(b)(3)(B), which states that "a motion alleging a defect in the indictment or information" must be filed before trial, "but at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense."

defendant to sandbag the prosecutors and the Court by withholding a motion to dismiss until after jeopardy has attached, thus denying the government the opportunity to amend the indictment -- exactly as Elonis attempts here, raising his claim for the first time long after the indictment was returned and the case tried.  Recognizing this, the Third Circuit has made clear that, in a post-trial challenge to the sufficiency of the indictment to state an offense, "we construe the factual allegations in the indictment liberally.  That is because 'indictments which are tardily challenged are liberally constructed in favor of validity.'"  United States v. Vitillo, 490 F.3d 314, 324 (3d Cir. 2007) (quoting United States v. Wander, 601 F.2d 1251, 1259 (3d Cir. 1979)).  At this stage, a court must uphold the indictment "unless it is so defective that it does not, by any reasonable construction, charge an offense."  Vitillo, 490 F.3d at 324 (citation omitted).

Panarella does not assist Elonis.[3]  There, as in many other decisions, the Third Circuit confirmed the rule that an indictment need only provide general notice of the crime charged.  The Court simply held that, where the government elects to include additional factual detail in the indictment, a court may review those factual allegations to determine whether or not the averments state a criminal offense.  Id. at 685-86.  (In Panarella, the indictment charged honest services fraud, and set forth in detail the corrupt transactions which the government alleged violated the law.  The Court accordingly proceeded to evaluate the legal sufficiency of the charge in light of the facts alleged.)

Specifically, Panarella stated:  "for purposes of Rule 12(b)(2), a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of

---

[3]  In Panarella, the Court deemed the indictment sufficient.  The Court also suggested that the Judicial Conference amend Rule 12(b)(3)(B) to fix the anomaly described above.  Panarella, 277 F.3d at 686-87.

the relevant criminal statute, as a matter of statutory interpretation." 277 F.3d at 685.  In this case, the essential facts which the government alleged -- specifying the elements of the offense, and stating that each violation included a threat to kill or injure -- obviously stated an offense under the statute.

Elonis' proposition, that an indictment must add more facts, so that the trial court can evaluate the sufficiency of the facts which will be proven, is a radical notion which would fundamentally alter the content of indictments under Rule 7, and has never been the law.  He states that the government must recite the content of the statement so that the Court can determine whether the words really constituted a threat.  There is no authority for such a rule; Elonis cites none.  Rather, most recently, the Third Circuit repeated that "[w]hile detailed allegations might well have been required under common-law pleading rules, . . . they surely are not contemplated by Rule 7(c)(1)." United States v. Bergrin, 650 F.3d 257, 264 (3d Cir. 2011) (quoting United States v. Resendiz–Ponce, 549 U.S. 102, 110 (2007)).  The Court of Appeals stated that although courts "may look for more than a mere 'recit[ation] in general terms [of] the essential elements of the offense, . . . [a] ruling on a motion to dismiss is not . . . a permissible vehicle for addressing the sufficiency of the government's evidence." Id. at 264–65 (citations omitted).  Indeed, "no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." Id. at 264 (quoting United States v. Rankin, 870 F.2d 109, 112 (3d Cir. 1989)).

Notably, Elonis does not assert at this stage that the indictment was insufficiently detailed under Rule 7.  Rather, he necessarily claims that the facts alleged -- threats to injure or kill -- are not crimes.  That argument falls of its own weight.

To be sure, Section 875(c) only extends to "true threats."  <u>Watts v. United States</u>, 394 U.S. 705, 707 (1969) (per curiam).  Protected speech includes  "political hyperbole" or "vehement," "caustic," or "unpleasantly sharp attacks" that fall short of true threats.  <u>Id.</u>  True threats, on the other hand, are "outside the First Amendment."  <u>R.A.V. v. City of St. Paul</u>, 505 U.S. 377, 388 (1992).  Here, the indictment alleged that threats to kill and/or injure were made, which obviously would fall within the scope of a true threat if proven.  The jury, when properly charged as to what constitutes a true threat under the statement, found Elonis guilty of four counts.  Elonis' current claim, that the indictment needed to say more and that the Court had to evaluate before the trial whether the facts would be sufficient, fails as a matter of law.  <u>See</u> <u>Keys v. United States</u>, 126 F.2d 181, 184 (8th Cir. 1942) (content of a threat need not be stated in the indictment); <u>United States v. Kistler</u>, 448 F. Supp. 2d 655, 656 (W.D. Va. 2008) (holding that indictment charging attempt to extort money by threat to injury to property or reputation was not defective because of its failure to set forth the alleged threatening letter, or its date or author); <u>United States v. Ahmad</u>, 329 F. Supp. 292, 294-97 (M.D. Pa 1971) (not necessary to set forth in the indictment the threatening letters charged.)

Elonis' reliance on <u>Russell v. United States</u>, 369 U.S. 749 (1962), is misplaced.  There, the Court addressed a statute which made it criminal to refuse to answer a question pertinent to a Congressional inquiry.  The indictments deemed insufficient in that case simply stated that the questions "were pertinent to the question then under inquiry" by a Congressional subcommittee,

- 6 -

without stating what that inquiry was. Russell has no bearing here, where the "essential facts" required by Rule 7(c) were the fact of threats, and the indictment specifically described those threats and the targets.

The other cases cited by Elonis in support of his novel argument are also unhelpful. In United States v. Baker, 890 F. Supp. 1375 (E.D. Mich. 1995), the court relied on passages stated in an indictment and concluded that they did not present threats to identifiable persons. The court never held that any particular specificity in the indictment was required. Here, as this Court has previously held and the jury found, the indictment alleged specific threats to kill or injure specific people, and thus the indictment was sufficient. United States v. Landham, 251 F.3d 1072, 1081-82 (6th Cir. 2001), stands in the same posture as Baker -- the court did not hold that any particular pleading was necessary, only that the statements recited in the indictment were not threats of bodily harm. Finally, United States v. Stock, 2012 WL 202761 (W.D. Pa. 2012), found the statements recited in an indictment sufficient, but also said nothing about the requirements of pleading.

Here, the indictment stated the elements of the charge as well as the allegation that the defendant made specific threats to kill or injure, which are indisputably crimes if proven. The belated claim that the indictment failed to state an offense should be denied.

     B.    This Court correctly charged the jury on the intent element of a violation of Section 875(c), a general intent crime.

The defendant requests a new trial and arrest of judgment pursuant to Rules 33(a) and 34(b), arguing that the court incorrectly charged the jury on the intent element of Section 875(c).

He claims that the Court was required to instruct the jury that it must find that the defendant acted with the intent to violate the law.  He is wrong.

Section 875(c) is a general intent crime necessitating a showing of an act done knowingly and intentionally.  This issue was extensively briefed and argued pretrial and during trial.  As this Court concluded, Section 875(c) prohibits the transmission of a threat, which is defined objectively as a statement which a reasonable person would understand as threatening bodily injury.  United States v. Himelwright, 42 F.3d 777, 782 (3d Cir. 1994).  As this Court has already held, "[t]he Third Circuit held that the 'intent' required with respect to threatening speech means the government must prove the defendant intentionally made the communication, not that he intended to make a threat. This intent requirement is limited to the defendant's state of mind when he made the statement or the communications. In this case, the 'intent' element is satisfied if the government proves the defendant intended to make the posts on Facebook."  Opinion, dated October 20, 2011 citing United States v. Kosma, 951 F.2d 549 (3d Cir. 1991).

Elonis now takes a new tack, asserting that the statute also requires proof of "willfulness," in the sense of a defendant's awareness that his knowing and intentional act violates the law.  His problem is that such a requirement does not appear in the statute.  As noted earlier, Section 875(c) states:

> Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

The word "willfully" does not appear.  On its face, as this Court held, this is a general intent provision.

Seeking to add a greater burden on the government, Elonis relies solely on dictum in Himelwright.  Def. Motion, page 11.  There, in the course of addressing whether 404(b) evidence was necessary, the Third Circuit stated, "The district court correctly determined that to establish a violation of this section, the government bore only the burden of proving that Himelwright acted knowingly and willfully when he placed the threatening telephone calls and that those calls were reasonably perceived as threatening bodily injury."  Himelwright, 42 F.3d at 782.

Obviously, the Third Circuit could not add an element to the statutory offense.  Rather, what it meant is made clear by a later exegesis by that Court on the meaning of the word "willfully."  Describing this term as "a 'notoriously slippery term,' a 'chameleon word' that 'takes color from the text in which it appears,'" United States v. Starnes, 583 F.3d 196, 210 (3d Cir. 2009) (quoting United States v. Ladish Malting Co., 135 F.3d 484, 487-88 (7th Cir. 1998)), the Third Circuit explained that there are "at least three levels of interpretation of the term." Starnes, 583 F.3d at 210.

First, "In some contexts, 'willfully' may denote 'an act which is intentional, or knowing, or voluntary, as distinguished from accidental.'"  Id. at 210 (quoting Bryan v. United States, 524 U.S. 184, 191 n.12 (1998)).

Second, "when 'willfully' is used in a criminal statute, and particularly where the term is used in conjunction with 'knowingly,' as it is in § 1001(a), it usually requires the government to prove that the defendant acted 'not merely "voluntarily," but with a "bad purpose,"' that is, with knowledge that his conduct was, in some general sense, 'unlawful.'"  Starnes, 583 F.3d at 210 (quoting Bryan, 524 U.S. at 192-93 & n.13)).

- 9 -

Third, "in some rare instances involving highly technical statutes that present the danger of ensnaring individuals engaged in apparently innocent conduct, such as the federal criminal tax and antistructuring provisions, 'willfully' has been read to require proof that the defendant actually knew of the specific law prohibiting the conduct." Starnes, 583 F.3d at 211.

Here, the term does not appear in any statutory text at all.  Thus, to the extent the word is applicable at all, it must fall only within the first definition, simply requiring proof of an intentional act.  The indictment so alleged, and the Court so properly instructed the jury.  Elonis' claim is without merit, defeated by the statutory text.

C.  The jury was properly instructed that a communication that is transmitted via the Internet traveled in interstate commerce.

The defendant next argues that the judge incorrectly instructed the jury as follows:
Because of the interstate nature of the Internet, if you find beyond a reasonable doubt that the defendant used the internet in communicating a threat, then that communication  traveled in interstate commerce.  It does not matter whether the computer that the communication was transported to was in Pennsylvania, and it does not matter whether the communication was transmitted from within Pennsylvania.  If the Internet was used in moving the communications, then it traveled in interstate commerce.

This was unquestionably a correct statement of the law.  Elonis does not argue otherwise. The Third Circuit has held "that because of the very interstate nature of the Internet, once a user submits a connection request to a website server or an image is transmitted from the website server back to user, the data has traveled in interstate commerce." United States v. MacEwan, 445 F.3d 237, 244 (3d Cir. 2006).   MacEwan was charged with transmitting child pornography in interstate commerce.  Third Circuit found "the Internet is an instrumentality and channel of interstate commerce" in holding that it did not matter whether "MacEwan downloaded the images from a server located within Pennsylvania or whether those images were transmitted

across state lines. It is sufficient that MacEwan downloaded those images from the Internet, a system that is inexorably intertwined with interstate commerce." Id.

Instead, Elonis argues that this Court erred in stating a "mandatory" proposition, that use of the Internet constitutes use of interstate commerce instead of saying that it "may" constitute such use. Elonis insists that the jury should have been afforded the opportunity to reach the conclusion itself that use of the Internet constitutes use of a facility of interstate commerce, but that the Court's instruction instead removed the interstate commerce element from its consideration. He did not, however, object to the instruction, and, as he acknowledges, review is for plain error. Def. Motion, page 18 n.7. That means Elonis must establish, in part, that the error affected the outcome of the proceedings, Johnson v. United States, 520 U.S. 461, 467 (1999), and that a miscarriage of justice would result, United States v. Olano, 507 U.S. 725, 736 (1993). "Orderly procedure requires that the respective adversaries' views as to how the jury should be instructed be presented to the trial judge in time to enable him to deliver an accurate charge and to minimize the risk of committing reversible error. It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." Henderson v. Kibbe, 431 U.S. 145, 154 (1977).

This is not one of those cases. In asserting that the Court removed an element from the jury's consideration, Elonis overlooks the Supreme Court's decision in Johnson v. United States, 520 U.S. 461 (1999). There, the Court held that omission of an element entirely in jury instructions is subject to review for plain error where no objection was made. The Court further stated that such an error in a jury instruction will not be corrected under plain error review where the point at issue was "essentially uncontroverted at trial." Johnson, 520 U.S. at 470. In

Johnson, the trial court erroneously instructed the jury that it should consider a defendant's false statement "material," removing from its consideration an element of the offense at issue.  The Supreme Court denied relief, stating, "Before the Eleventh Circuit and in her briefing before this Court, petitioner has presented no plausible argument that the false statement under oath for which she was convicted - lying about the source of the tens of thousands of dollars she used to improve her home - was somehow not material to the grand jury investigation."  Id.  Therefore, the Court stated, "On this record there is no basis for concluding that the error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'  Indeed, it would be the reversal of a conviction such as this which would have that effect."  Id.[4]

Here, identically, Elonis has never disputed the proof at issue.  He never argued at trial that his Facebook postings did not travel in interstate commerce.  As this Court (and any other intelligent observer of modern technology) readily knows, such a claim would be specious.  Even now, Elonis does not claim that the government failed to prove use of a facility of interstate commerce.  He simply states that the jury should have been given the option to reach an irrational and unfounded conclusion on a point he never addressed or disputed.  The Supreme Court's decision in Johnson decisively rejects this claim.  The point was "essentially uncontroverted at trial," and reversal of the conviction is not allowed.

---

[4] As this passage makes clear, Elonis' reasoning in support of plain error relief -- that failure to find the interstate commerce element means the jury did not find a federal crime, see Def. Motion at page 18 n.7 -- presents entirely the wrong focus.

- 12 -

D.      There was more than sufficient evidence to support a finding of guilt for Counts
        Three and Five.

Elonis seeks a judgment of acquittal on Counts Three and Five, under Rule 29,[5] arguing

that the communications at issue in those charges were not true threats.  His claim is without

merit.

The standard for a judgment of acquittal under Federal Rule of Criminal Procedure 29 is

the same deferential standard applied by an appellate court.  See United States v. Mercado, 610

F.3d 841, 845 (3d Cir. 2010).

> A Rule 29 motion for judgment of acquittal obliges a district court to "'review the record
> in the light more favorable to the prosecution to determine whether any rational trier of
> fact could have found proof of guilt beyond a reasonable doubt based on the available
> evidence.'"  United States v. Smith, 294 F.3d 473, 476 (3d Cir.2002) (quoting United
> States v. Wolfe, 245 F.3d 257, 262 (3d Cir.2001)).  This Court reviews grants or denials
> of Rule 29 motions de novo and independently applies the same standard as the District
> Court.

United States v. Bobb, 471 F.3d 491, 494 (3d Cir. 2006).

"Under this particularly deferential standard of review, a reviewing court 'must be ever

vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the

evidence, or by substituting [the court's] judgment for that of the jury.'"  United States v. Boria,

592 F.3d 476, 480 (3d Cir. 2010) (ellipsis and bracketed material in original) (quoting United

---

[5]  He does not contend that the verdicts were against the weight of the evidence, and
therefore there should be a new trial under Rule 33.  Such a claim would fail in any event.
"Motions for a new trial based on the weight of the evidence are not favored.  See United States
v. Martinez, 763 F.2d 1297, 1313 (11th Cir.1985).  Such motions are to be granted sparingly and
only in exceptional cases."  Government of Virgin Islands v. Derricks, 810 F.2d 50, 55 (3d Cir.
1987).  "A district court can order a new trial on the ground that the jury's verdict is contrary to
the weight of the evidence only if it believes that there is a serious danger that a miscarriage of
justice has occurred -- that is, that an innocent person has been convicted."  United States v.
Johnson, 302 F.3d 139, 150 (3d Cir. 2002) (internal quotation marks omitted; quoting United
States v. Santos, 20 F.3d 280, 285 (7th Cir. 1994)).

- 13 -

States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005)).  The Court "'must view the evidence in the light most favorable to the jury verdict and presume that the jury properly evaluated credibility of the witnesses, found the facts, and drew rational inferences. . . . The verdict of the jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it.'"  United States v. Wasserson, 418 F. 3d 225, 237 (3d Cir. 2005) (quoting United States v. Iafelice, 978 F.2d 92, 94 (3d Cir. 1992) (citations omitted)).

Here, viewing the evidence in the light most favorable to the government, there was more than sufficient evidence to support a reasonable jury's finding of guilt in this case for Counts Three and Five, as this Court already concluded.

In support of his argument, the defendant asserts the threats charged in Counts Three and Five are conditional and not directed at their intended targets.  Def. Motion, page 22.

While it is true that the factors used to determine whether a true threat is made include the reaction of those who received the threat, whether the threat was conditional, whether the threat was communicated directly to its victim, the history of the relationship between the defendant and the victim, and the context in which the threat was made, the defendant makes an argument completely inconsistent with the evidence adduced at trial.  Kosma, 951 F.2d at 554.  These are factors only, and a jury need not find all factors present to find a true threat was made.  In this case, trial evidence clearly supports the jury's verdict that the defendant made true threats in all Counts, including Counts Three and Five.

Notably, jurors could easily conclude based on the evidence introduced at trial that the defendant's audience included the very subjects of his alarming messages.   Count Three involved a message targeted at local law enforcement, stating:

- 14 -

> And if worse comes to worse
> I've got enough explosives
> to take care of the State Police and the Sheriff's Department.

Count Five concerned a message aimed at the FBI, stating in part:

> So the next time you knock, you best be serving a warrant
> And bring yo' SWAT and an explosives expert while you're at it
> Cause little did y'all know, I was strapped wit'a bomb
> Why do you think it took me so long to get dressed with no shoes on?
> I was jus' waitin' for y'all to handcuff me and pat me down
> Touch the detonator in my pocket and we're all goin'
> (BOOM!)

The defendant knew law enforcement (as charged victims in both Counts Three and Five) were aware of his Facebook activities.   Evidence at trial showed the Berks County Sheriff's Department and the Pennsylvania State Police were aware of the defendant's Facebook activity as law enforcement was  involved in the Protection From Abuse proceedings where the defendant's Facebook threats to his wife were at issue.  Prior to posting his threat in Count Five, the defendant was well aware that the FBI was investigating him (and referred to an agent's prior visit).   The defendant knew posting such egregious threats to various law enforcement agencies would reach their intended audience as well as put any other recipients reasonably fearful of the defendant's behavior.

        The FBI arrested the defendant shortly after he posted his threat directed to FBI agents. Such reactions are probative that the messages were threats as understood by a reasonable person. See United States v. Saunders, 166 F.3d 907, 913 (7th Cir. 1999); United States v. D'Amario, 330 F. App'x 409 (3d Cir. 2009) (not precedential) (statements were true threats when a judge became concerned enough to alert U.S. Marshals Service and have a security system installed); United States v. Spurilli, 118 F.3d 221, 228 (4th Cir. 1997) (true threat found where ATF agent

who received the threat felt it was serious enough to patch it through to a Special Agent at 6:30 a.m.).

Further, the evidence at trial showed the defendant's threats were not conditional, in that a threat is not to be construed as conditional if it "had a reasonable tendency to create apprehension that its originator will act in accordance with its tenor."  United States v. Cox, 957 F.2d 264, 266 (6th Cir. 1992).  The statements in this case are a far cry from those made at the political rally described in United States v. Watts, supra (where the speaker alluded to shooting the President if he were inducted and given a rifle).  The defendant's threats were not made in a political context, nor were they conditioned upon anything.  The defendant's threats were meant to cause immediate fear in their recipients, and succeeded.  It should be noted that the evidence at trial showed other recipients, other than those directly mentioned in the threatening communications, were fearful of the defendant's threats.  Witnesses testified that they saw the threats directed to law enforcement (as charged in Counts Three and Five) and were fearful for the intended targets.  These witnesses were the defendant's Facebook "friends" (and the defendant had absolute knowledge his message would be communicated to no less than his Facebook "friends").

Based on the evidence introduced at trial, the jury easily concluded that the defendant's statements were serious expressions to inflict bodily harm or death on  law enforcement, elementary school children, and federal agents.   Based on the evidence, the jury properly concluded that the statements made on Elonis' Facebook page represent true threats which violate the statute and are not protected by the First Amendment.  Because this was a reasonable

- 16 -

conclusion, even if other conclusions are possible, the jury's verdict may not be disturbed on

Rule 29 review.

IV.     <u>Conclusion</u>

      For these reasons, the defendant's motion should be denied in its entirety.

                        Respectfully submitted,

                        ZANE DAVID MEMEGER
                        United States Attorney

                        /s Robert A. Zauzmer                     
                        ROBERT A. ZAUZMER
                        Assistant United States Attorney
                        Chief of Appeals

                        /s Sherri A. Stephan                     
                        SHERRI A. STEPHAN
                        Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this pleading has been served on the Filing User identified

below through the Electronic Case Filing (ECF) system:


Ronald H. Levine, Esq.
Post & Shell, P.C.
Four Penn Center
1600 John F. Kennedy Blvd.
Philadelphia, PA  19103


/s Sherri A. Stephan
SHERRI A. STEPHAN
Assistant United States Attorney


DATED:  August 7, 2012..