**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | No. 11-13 |
| ANTHONY DOUGLAS ELONIS | : | |
| | : | |

**M E M O R A N D U M**

STENGEL, J.                                          September 19, 2012

Anthony Elonis was convicted by a jury of four counts of violating 18 U.S.C. § 875(c) by posting threatening comments to the social networking website, Facebook. The jury acquitted on one count. The Defendant filed post-convictions motions, which I will deny.

## I. Discussion

### A. Rule12(b)(3)(B)

Elonis asserts that the indictment, charging violations of § 875(c), was insufficient to state an offense because it did not include the specific threatening language posted on Facebook. The Government argues that filing a motion to dismiss the indictment well after the close of trial and verdict by the jury is grossly unfair to the prosecution because it allows the defense to "sandbag" the Government by withholding its motion to dismiss until after jeopardy attaches.[1] The Government notes, correctly, the language in the

---

[1] The Court also notes the Government's objections to the timeliness of Defendant's motion as well after the fourteen (14) day time-limit imposed under the rules.

indictment tracked the language of the statute, included the date and location of each violation, and stated the general content and identity of the target of the threat.  Despite the patent untimeliness of the post-trial motions, I will consider it on the merits.[2]

Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure states that "at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense."

An indictment is sufficient if it: "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution."  United States v. Rankin, 870 F.2d 109, 112 (3d Cir. 1989).  No greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution."  Id. at 112.  "Generally, an indictment will satisfy these requirements where it informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during

---

[2] For example, Count Two asserted:

> On or about November 6, 2010, through on or about November 15, 2010, in Bethlehem, in the Eastern District of Pennsylvania, and elsewhere, defendant ANTHONY DOUGLAS ELONIS knowingly and willfully transmitted in interstate and foreign commerce, via a computer and the Internet, a communication to others, that is, a communication containing a threat to injure the person of another, specifically, a threat to injure and kill T.E., a person known to the grand jury. In violation of Title 18, United States Code, Section 875(c).

Similarly, Count Three alleged "a threat to injure employees of the Pennsylvania State Police and the Berks County Sheriffs Department" made on November 15, 2010; Count Four alleged "a threat to injure a kindergarten class of elementary school children" made on November 16, 2010; and Count Five alleged "a threat to injure an agent of the Federal Bureau of Investigation" made on November 30, 2010.

which the violations occurred."  Huet, 665 F.3d 588, 2012 U.S. App. LEXIS 133, 2012

WL 19378, at *3 (citing United States v. Urban, 404 F.3d 754, 771 (3d Cir. 2005)).

The content required for an indictment is set forth in Rule 7 of the Federal Rules of

Criminal Procedure.  Rule 7(c)(1) says an indictment must "be a plain, concise, and

definite written statement of the essential facts constituting the offense charged" and

"must give the official or customary citation of the statute, rule, regulation, or other

provision of law that the defendant is alleged to have violated."  The purpose of Rule 7

was to abolish detailed pleading requirements and the technicalities previously required

in criminal pleading.  See Huet, 665 F.3d 588, 2012 U.S. App. LEXIS 133, 2012 WL

19378, at *3 (citing United States v. Resendiz-Ponce, 549 U.S. 102, 110 (2007)); see also

United States v. Bergrin, 650 F.3d 257, 264 (3d Cir. 2011) (same citation).  "Although

detailed allegations may have been required under a common law pleading regime, they

'surely are not contemplated by [the Federal Rules].'"  Huet, 665 F.3d 588, 2012 U.S.

App. LEXIS 133, 2012 WL 19378, at *3 (quoting Resendiz-Ponce, 549 U.S. at 110).

Defendant is charged with violating 18 U.S.C. § 875(c), which criminalizes the

"transmi[ssion] in interstate or foreign commerce [of] any communication containing any

threat to kidnap any person or any threat to injure the person of another."  "To prove a

violation under this statute, the Government must prove that the defendant 'acted

knowingly and willfully' in making the threatening communication and that the

communication was 'reasonably perceived as threatening bodily injury.'"  United States

v. Voneida, 337 Fed.App'x 246, 247 (3d Cir. 2009) (quoting United States v.

Himelwright, 42 F.3d 777, 782 (3d Cir. 1994)).

In <u>United States v. Kistler</u>, 558 F. Supp. 2d 655, 657 (W.D. Va. 2008), the court determined that the indictment was sufficient in almost identical circumstances. Specifically, in that case the defendant, Kistler, was charged with nine counts of transmitting in interstate commerce a communication containing a threat to injure the person of another, in violation of 18 U.S.C. § 875(c).  The indictment returned against the defendant stated in its entirety: "The Grand Jury charges that: 1.  On or about the following dates, in the Western District of Virginia and elsewhere, Christopher Jason Kistler transmitted in interstate commerce a communication containing a threat to injure the person of another, namely victims 'A' and 'B'." <u>Id.</u> at 656.  The indictment went on to state each of the dates, which correlated with the victim and the charge.[3] <u>Id.</u>  The defendant moved to dismiss the indictment on the ground that it failed to allege the elements of the crime charged.  He argued that the indictment did not contain the specific words of the threats alleged and without those words, it contained an insufficient statement of the elements of the crime, since to be proscribed, the communication must contain a "true threat." <u>Id.</u>

The court denied the motion, stating "the indictment is sufficient, if barely. Whatever the rule at common law, the modern rule is that all of the words of a threat need not be set forth in the indictment." <u>Id.</u> (citing <u>Keys v. United States</u>, 126 F.2d 181, 184 (8th Cir. 1942) (holding that indictment charging attempt to extort money by threat to injure property or reputation was not defective because of its failure to set forth the alleged threatening letter, or its date or author).  The court went on to state that "[w]hile

---

[3] For example, the table states Count One, 2/10/2007, Victim A.

the indictment in the present case is bare bones, it narrowly passes constitutional muster,
with its recitation of the dates of the communications and indication, at least by letter of
alphabet, of the two victims." Id. See also United States v. Ahmad, 329 F. Supp. 292,
294-97 (M.D. Pa. 1971) (holding that while it is not necessary to set forth in the
indictment the threatening letters charged, it is not surplusage to do so); Wilson v. United
States, 275 F. 307 (2d Cir. N.Y. 1921) (finding that the content of the letters in a
conspiracy to defraud case were not required in the indictment and holding that even if
the content of the letter should have been described or set forth in the indictments,
defendants raised the question too late and the defect was cured by the verdict).

Similarly, in United States v. Musgrove, 2011 U.S. Dist. LEXIS 107775 (E.D.
Wis. Apr. 20, 2011), the court found that, despite defendant's objections to the contrary,
the indictment returned by the grand jury was constitutional.[4]  In challenging the
sufficiency of the indictment, the defendant stated that it failed to include the alleged
threat at issue and the alleged victim. Id. at 5.  The court found that the language
"appropriately tracks the language of the statute which states 'whoever transmits in
interstate or foreign commerce any communication containing any threat to kidnap any
person or any threat to injure the person of another, shall be fined under this title or
imprisoned not more than five years, or both.'" Id. at 4-5 (quoting 18 U.S.C § 875(c)).
The court held that Seventh Circuit does not require that an indictment charging the
defendant with criminal use of threatening language allege a "true threat" nor has it

---

[4] The indictment provided, "On or about January 14, 2011, in the State and Eastern District of Wisconsin, Michael
L. Musgrove knowingly transmitted in interstate commerce a communication containing a threat to injure the person
of another.  All in violation of Title 18, United States Code, Section 875(c)."

reversed a conviction for failure to include language defining what constitutes a "true threat" in an indictment.  Id. at 11-12.

The indictment in this case alleges more than enough facts and certainly more than the cases discussed above.  See Kistler, 558 F. Supp. 2d at 657.  It states the nature of the threat, such as "to injure and kill" as well as the target of the threat and the date the threat was made.  Therefore, the indictment tracks the statutory language of 18 U.S.C. § 875(c) as required and includes sufficient information to place the Defendant on notice of the offense.  I will deny Defendant's motion as to the sufficiency of the indictment.

### B.  Fed. R. Crim. Pro. 33(a) and 34(b)

Elonis also requests a new trial under and arrest of judgment under Rules 33(a) and 34(b) of the Federal Rules of Criminal Procedure, respectively, claiming that the court incorrectly charged the jury on the element of "willfulness" of § 875(c).  Under Rule 34, "[u]pon the defendant's motion or on its own, the court must arrest judgment if: (1) the indictment or information does not charge an offense; or (2) the court does not have jurisdiction of the charged offense."  A motion to arrest judgment must be based on a defect on the face of the indictment, and not upon the evidence or its sufficiency. United States v. Casile, 2011 U.S.Dist. LEXIS 49437 at *10 (E.D. Pa. May 9, 2011) (Baylson, J.).

Under Rule 33(a), "[a] district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted."  United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002).  Unlike

a motion for insufficiency of the evidence under Rule 29, in which the court views the evidence in the light most favorable to the Government, a Rule 33 motion permits the court to exercise its own judgment in assessing the Government's case.  <u>United States v. Brennan</u>, 326 F.3d 176, 189 (3d Cir. 2003).  The court "may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable."  <u>United States v. Nissenbaum</u>, 2001 U.S.Dist. LEXIS 6039 at *2-*3 (E.D. Pa. May 8, 2001) (Waldman, J.).  Additionally, the Third Circuit has emphasized that motions for a new trial based upon weight of the evidence are not favored and should only be granted sparingly in exceptional cases.  <u>Government of the Virgin Islands v. Derricks</u>, 810 F.2d 50, 55 (3d Cir. 1987).

Elonis claims that, in order to overcome the protections of the First Amendment, "willfully" must be construed to mean that the Defendant intended to violate the law or act with a "bad purpose."  Defendant relies on <u>United States v. Himelwright</u>, 42 F.3d 777, 782 (3d Cir. 1994) for this proposition.  In that case, Himelwright was charged with transmitting a wire communication with the intent to injure another, in violation of 18 U.S.C. § 875(c).  The court found that the Government bore the burden of proving that Himelwright acted knowingly and willfully when he placed the threatening telephone calls, but the Government bore no burden of proving that Himelwright intended his calls to be threatening or that he had an ability at the time to carry out the threats.  <u>Himelwright</u>, 42 F.3d at 782.

Section 875(c) is a general intent crime necessitating that the prosecution prove only that the act, i.e. the "statement," was performed knowingly and intentionally.[5] It is not required that the defendant intend to make a threat.[6] The term "willfully" does not appear in the statute, the Government is correct that the language in <u>Himelwright</u> suggesting a requirement of willfulness is dicta and is not binding on this court or capable of changing the statutory language.

Under the direction of <u>United States v. Kosma</u>, 951 F.2d 549, 557 (3d Cir. 1991), "[t]he objective, reasonable person test requires that the defendant intentionally make a statement, written or oral, in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm."  This is known as the objective, reasonable speaker test.  <u>See also</u>, <u>United States</u>

---

[5] In my charge to the jury regarding the term intentionally, I instructed them that:

> A statement is made a true threat when a defendant intentionally makes a statement in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily injury or take the life of an individual.  It is not necessary that the government prove that the defendant intended to carry out the threat or that he had the present ability to carry out the threat.  This is called the objective "reasonable speaker" test.

In my charge to the jury regarding the term knowingly, I instructed them that:

> A person acts "knowingly" if he acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness.  The government is not required to prove that the defendant intended to carry out the threat. The intent required refers to an intent to make the communications in the first place.

[6] In my charge to the jury regarding willfully, I instructed them that:

> The Indictment uses the term knowingly and willfully.  The word intentionally subsumes willfully.  Therefore, the defendant need only have the intent to make the communications in the first place. The Government is not required to prove that the defendant himself intended for the statement to be a true threat.  Whether a statement or communication on the Facebook posting constitutes a "true threat" is determined by the objective standard I described for you earlier.

v. Elonis, 2011 U.S. Dist. LEXIS 121401, 2011 WL 5024284, at *2 (E.D. Pa. Oct. 20, 2011) (quoting Kosma, 951 F.2d at 559).  Another example of willfully as interpreted and applied in this Circuit is United States v. Richards, 415 F. Supp. 2d 547 (E.D. Pa. 2005), rev'd on other grounds, 271 Fed. Appx. 174 (3d Cir. 2008).  In that case, the district court held: "[T]he phrase 'willfully' as used in § 879 requires only that the Government demonstrate, beyond a reasonable doubt, that 'a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm upon or take the life of' Senator Clinton."  415 F. Supp. 2d at 558 (citing Kosma, 951 F.2d at 557).

In United States v. Brahm, 520 F. Supp. 2d 619, 629 (D.N.J. 2007), the court interpreted willfulness in the context of 18 U.S.C. § 1038(a)(1), stating that in Kosma, the Third Circuit interpreted the word "willfully" by describing the two prevailing views of the meaning of "willfully" as subjective and objective.  520 F. Supp. 2d at 629 (citing Kosma, 951 F.2d at 556).  The objective standard, described by the court as a "reasonable" standard, required only that the defendant communicate a threat in a context where a reasonable person would recognize as a serious indication of intent.  Id. (citing Kosma, 951 F.2d at 557).  The court went on to say that the language used by the court in Kosma to define the "willful" standard for culpability is reminiscent of § 1038 and both statutes have similar purposes in protecting persons from harm resulting from threatening conduct or speech.  18 U.S.C. §§ 871, 1038.

None of the interpretations of "willfully" as first articulated in Kosma require that the Defendant must intend to violate a law.  I find that the term willfully in the context of

§ 875(c) denotes only an act which is intentional, knowing, or voluntary and that a reasonable speaker would foresee the statement would be perceived as expressing a threat or an intent to do harm. See United States v. Starnes, 583 F.3d 196, 201 (3d Cir. 2009) (discussing the three levels of the interpretation of the term "willfully"). The term willfully does not appear in the statutory language and requiring the Defendant have the requisite state of mind suggested by the Defendant undermines the objective test emphasized by the Third Circuit.

Under these circumstances, the jury's verdict is consistent with the weight of the evidence. There is no danger that a miscarriage of justice has occurred.[7] The instructions to the jury regarding intentionally and willfully were not unconstitutionally "collapsed." Instead, following Third Circuit precedent, the willfulness requirement of the statute requires only that the defendant intentionally make a statement in a context wherein a reasonable person would foresee that the statement would be interpreted as a serious expression of an intention to inflict bodily harm.

## C. Jury Instruction Regarding Interstate Commerce

Elonis contends that a communication over the internet does not necessarily travel in interstate commerce. This is wrong. At trial I instructed the jury as follows:

> Because of the interstate nature of the Internet, if you find beyond a reasonable doubt that the defendant used the Internet in communicating a threat, then that communication traveled in interstate commerce. It does not

---

[7] The Government put forth substantial evidence concerning the posts made by the Defendant on his Facebook account. The Government submitted testimony and evidence that Defendant's estranged wife sought the Protection From Abuse Order, in part, because of the threats on Facebook, the Defendant was aware of this, and the Defendant continued to post the threating comments. Additionally, there was testimony from co-workers' and Defendant's estranged wife that Defendant was aware of comments from "friends" on Facebook telling Defendant the comments were threatening or inappropriate.

> matter whether the computer that the communication was transported to
> was in Pennsylvania, and it does not matter whether the communication
> was transmitted from within Pennsylvania. If the Internet was used in
> moving the communications, then it traveled in interstate commerce.

The Third Circuit has held that "because of the very interstate nature of the Internet, once a user submits a connection request to a website server or an image is transmitted from the website server back to user, the data has traveled in interstate commerce." United States v. MacEwan, 445 F.3d 237, 244 (3d Cir. 2006). The instruction given to the jury was not in error, as it was consistent with the Third Circuit law.

Finally, the Defendant did not object to the instruction at the time of trial. Defendant concedes that he did not object to the Court's instruction at trial and that review is therefore limited to plain error review. "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Fed. R. Crim. P. 52(b). Accordingly, "before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" Johnson v. United States, 520 U.S. 461, 466-67 (1997) (quoting United States v. Olano, 507 U.S. 725, 732 (1993)).

The instruction that one's use of the Internet, standing alone, is enough to satisfy the interstate commerce element of § 875(c) was the correct statement of law. Additionally, even if the instruction was somehow in error, given the Third Circuit jurisprudence, as well as other courts' findings regarding transmission of information via

the Internet, it was certainly not plain error. In <u>MacEwan</u>, 445 F.3d 237, the Third Circuit found that "[b]ecause of fluctuations in the volume of Internet traffic and determinations by the systems as to what line constitutes the 'Shortest Path First,' a website connection request can travel entirely intrastate or partially intrastate." <u>Id.</u> at 244. Ultimately, the court held that "the Internet is an instrumentality and channel of interstate commerce" and it "does not matter whether [defendant] downloaded the images from a server located within Pennsylvania or whether those images were transmitted across state lines. It is sufficient that [defendant] downloaded those images from the Internet, a system that is inexorably intertwined with interstate commerce." <u>Id.</u> at 245; <u>see also</u> <u>United States v. Schade</u>, Crim. A. No. 08-2388, 318 Fed. Appx. 91, 2009 U.S. App. LEXIS 6732, 2009 WL 808308, at *3 (3d Cir. Mar. 30, 2009) (reaffirming <u>MacEwan</u>). Other courts have similarly found that use of the Internet for transmission of images or messages satisfies the requirement of interstate commerce. <u>See, e.g.</u>, <u>United States v. Carroll</u>, 105 F.3d 740, 742 (1st Cir. 1997) ("Transmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce."); <u>United States v. Lewis</u>, 554 F.3d 208, 214-16 (1st Cir. 2009) (holding one's use of the internet, "standing alone," is enough to satisfy a penal statute's "in interstate . . . commerce" element); <u>United States v. Runyan</u>, 290 F.3d 223, 239 (5th Cir. 2002) ("We join the First Circuit in holding that 'transmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce' for the purposes of 18 U.S.C. § 2251"); <u>United States v. Tykarsky</u>, 446 F.3d 458 (3d Cir.

2006) (citing <u>MacEwan</u> and holding that proof of transmission over the Internet, i.e.

communicating with the putative minor via the Internet, regardless of whether the

transmission crosses state lines is all that is required to satisfy the jurisdictional element

of § 2422(b)); <u>United States v. Pomerico</u>, Crim. A. No. 06-113, 2008 U.S. Dist. LEXIS

77783, 2008 WL 4469465, at *3 (E.D.N.Y. Oct. 30, 2008) ("use of the Internet satisfies

the interstate commerce element of [the child pornography statute],18 U.S.C. §

2252A(a)(2)(B)."); <u>United States v. Fumo</u>, 2009 U.S. Dist. LEXIS 51581 (E.D. Pa. 2009)

(same); <u>United States v. Gouin</u>, No. CR05-433RSL, 2008 U.S. Dist. LEXIS 33709, at *6-

*7 (W.D. Wash. Apr. 24, 2008) (finding "compelling" the testimony of an expert witness

about "why the use of the Internet to transmit the visual depictions at issue is inherently

part of interstate commerce" and following <u>MacEwan</u>).  Therefore, I will deny

Defendant's motion as it pertains to the jury instructions regarding interstate commerce.

### D.  Rule 29(c)

Defendant argues that there was insufficient evidence to support a conviction on

Counts Three and Five because, although offensive, his postings were not criminal.

Specifically, Defendant argues that the words in Count Three are based on some future,

unspecified and completely free-floating contingency: "And if worse comes to worse,

I've got enough explosives to take care of the state police and sheriff's department."

Defendant also argues Count Three is not directed at any Facebook friend and was a

public posting, so it should have First Amendment protection because it was broadcast to

a large group of people.[8]  Defendant further argues that Count Five similarly fails to state a true threat because the post concerns a monologue about an event that had already occurred as well as conditional statements and demands, but not threats.[9]  Defendant argues that Count Five contains no threats to inflict injury.  Additionally, Defendant cites Watts v. United States, 394 U.S. 708 (1969), to support his argument that the comments were not threats because they were made to a public audience and were conditional in nature.

Because a trial court must give deference to a jury's verdict, the convicted defendant carries "a very heavy burden" in bringing a motion under Rule 29.  United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir. 1995); see also United States v. Rosario, 118 F.3d 160, 162-63 (3d Cir. 1997).  In evaluating a motion challenging the sufficiency of the evidence introduced at trial, the court "must determine whether a reasonable jury believing the Government's evidence could find beyond a reasonable doubt that the Government proved all the elements of the offenses."  United States v. Salmon, 944 F.2d 1106, 1113 (3d Cir. 1991); see also United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005).  Accordingly, the record is reviewed in the light most favorable to the Government.  United States v. Gibbs, 190 F.3d 188, 197 (3d Cir. 1999).  Additionally, a

---

[8] Defendant argues that because the post was public in order to view it a person would have to log on to Facebook, search for the Defendant's website and read on his Facebook page to find the specific post.

[9] The Facebook post referred to in Count Five states:

> You know your shit is ridiculous when you have the FBI knocking at the door.  Little agent lady stood so close. Took all my strength I had not to turn the bitch ghost, pull my knife, flick my wrist, and slit her throat, leave her bleeding from her jugular in the arms of her partner.  Laughter.  So the next time you knock you best be serving a warrant and bring in a S.W.A.T. and an explosives expert while you are at it, because  little did ya'll know I was strapped with a bomb.  Why do you think it took me so long to get dressed with no shoes on?  I was just waiting for ya'll to handcuff me and pat me down, touch the detonator in my pocket, and we're all going boom.

court may find that the Government introduced insufficient evidence to support a conviction only where "the prosecution's failure is clear."  United States v. Leon, 739 F.2d 885, 891 (3d Cir. 1984) (quoting Burks v. United States, 437 U.S. 1, 17 (1978)).

To convict the Defendant of transmitting threats in interstate commerce, the Government was required to prove beyond a reasonable doubt that the Defendant made a true threat that was transmitted in interstate commerce.  18 U.S.C. § 875(c).  In determining whether a true threat was made, the jury may consider factors such as the reaction of those who received the threat, whether the threat was conditional, whether the threat was communicated directly to its victim, the history of the relationship between the defendant and the victim, the context in which the threat was made, and whether the defendant makes an argument completely inconsistent with the evidence adduced at trial. Kosma, 951 F.2d at 554.

However, these are factors only, and a jury need not find all factors present to find a true threat was made.  The Government presented evidence at trial showing that the Berks County Sheriff's Department and the Pennsylvania State Police were aware of the Defendant's Facebook postings due to the Protection from Abuse Order obtained by the Defendant's estranged wife.  The public nature of the comments meant only that the intended recipient named in the post would receive the message as well as put any other readers in reasonable fear of the Defendant's behavior.

Further, the evidence at trial showed the Defendant's threats were not conditional. A threat is not to be construed as conditional if it "had a reasonable tendency to create apprehension that its originator will act in accordance with its tenor."  United States v.

<u>Cox</u>, 957 F.2d 264, 266 (6th Cir. 1992).  Defendant's wife sought a Protection from Abuse Order, in part, due to the threatening posts.  After the FBI agent went to Defendant's house to discuss the posts, the Defendant made additional threatening posts. The evidence presented at trial showed other recipients, other than those directly mentioned in the threatening communications, were also fearful of the defendant's threats.

This evidence is sufficient to support a reasonable jury's finding of guilt in Counts Three and Five.  Drawing all reasonable inferences in the Government's favor, I find that the evidence introduced at trial was sufficient to support the jury's verdict that the Defendant was guilty, beyond a reasonable doubt, of making "true threats" in Counts Three and Five.  A reasonable person making the Facebook postings in question would surely foresee that the statement would be considered threatening to its recipient.  This was a question for the jury and the verdict was certainly supported by the evidence. Therefore, Defendant's motion for a judgment of acquittal will be denied.

## I. Conclusion

For the reasons set forth above, I will deny Defendant's Post Trial Motions.

An appropriate Order follows.